**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CALVIN NESMITH, | : | **Hon. Joel A. Pisano** |
| | : | |
| Petitioner, | : | Civil Action No. 05-4069 (JAP) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| RONALD CATHEL, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

>    CALVIN NESMITH, #71405B
>    Northern State Prison
>    Newark, New Jersey  07114
>    Petitioner Pro Se

>    EDWARD J. DE FAZIO, HUDSON COUNTY PROSECUTOR
>    SUSAN B. GYSS, ASSISTANT PROSECUTOR
>    595 Newark Avenue
>    Jersey City, New Jersey  07306
>    Attorneys for Respondents

**PISANO**, District Judge

Calvin Nesmith filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a conviction in the Superior Court of New Jersey, Hudson County. Respondents filed an Answer, arguing that the Petition should be dismissed on the merits, together with relevant portions of the state court record.  Petitioner filed a letter, together with several documents.  For the reasons expressed below, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

# I.  BACKGROUND

Petitioner challenges a judgment of conviction entered on December 18, 1996, in the

Superior Court of New Jersey, Hudson County, after a jury found him guilty of armed robbery,

conspiracy to commit robbery, possession of a handgun for an unlawful purpose, possession of a

handgun without a permit, criminal restraint, and possession of a razor under circumstances not

manifestly appropriate for its lawful use.  The Law Division granted the state's motion to

sentence Petitioner to an extended term of imprisonment as a persistent offender under the

provisions of N.J. Stat. Ann. § 2C:44-3(a), and sentenced him to life imprisonment, with a 25-

year period of parole ineligibility.

Petitioner appealed.  The Superior Court of New Jersey, Appellate Division, affirmed the

conviction and remanded for resentencing.  See State v. Nesmith, Docket No. A-3174-96T4 slip

op. (N.J. Super., App. Div., April 14, 1998).  On June 24, 1998, the Law Division resentenced

Petitioner to a 50-year term of imprisonment, with a 20-year period of parole ineligibility.

Petitioner filed a petition for certification, which the New Jersey Supreme Court denied on July

13, 1998.

Petitioner filed an unsigned and undated pro se petition for post conviction relief, which

the Law Division stamped as received on April 16, 1999.  Counsel for Petitioner thereafter filed a

brief and supplemented Petitioner's submissions, and Petitioner filed a pro se brief.  The Law

Division denied relief without an evidentiary hearing in an order filed December 12, 2000, even

though Petitioner's counsel failed to appear for oral argument and Petitioner did not elect to

proceed pro se.  Petitioner appealed.  In an opinion filed August 21, 2002, the Appellate Division

reversed and remanded for Petitioner's counsel to have an opportunity to present his claims at

2

argument on the petition.  See State v. Nesmith, Docket No. A-3922-00T4 slip op. (N.J. Super.,

App. Div., Aug. 21, 2002).  After hearing oral argument, on May 5, 2003, the Law Division

again denied post-conviction relief.  Petitioner appealed, and on October 29, 2004, the Appellate

Division affirmed.  See State v. Nesmith, Docket Nos. A-00164-03T4, A-0103-03T4 slip op.

(N.J. Super., App. Div., Oct. 29, 2004).  On February 16, 2005, the Supreme Court of New

Jersey denied certification.  See State v. Nesmith, 182 N.J. 630 (2005) (table).

On May 7, 2005, Petitioner forwarded his first petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254 to the Clerk of this Court.  The Clerk received it on May 13, 2005.  See

Nesmith v. Cathel, Civil No. 05-2505 (JAG) (D.N.J. filed May 13, 2005).  In response to this

Court's Notice and Order pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), Petitioner

elected to withdraw the first petition without prejudice to the filing of his all-inclusive petition,

subject to the statute of limitations.  On June 27, 2005, this Court dismissed the first petition

without prejudice.

On August 12, 2005, the Clerk received Petitioner's second § 2254 Petition (the petition

before this Court), which is undated.  The petition raises nine grounds:

> Ground One:  THE COURT'S FAILURE TO INSTRUCT THE
> JURY THAT DEFENDANT COULD BE CONVICTED OF
> SECOND DEGREE ROBBERY AS AN ACCOMPLICE EVEN
> IF THE PRINCIPAL HAD COMMITTED FIRST DEGREE
> ROBBERY CONSTITUTED REVERSIBLE ERROR.
>
> Ground Two:  THE COURT'S REFUSAL TO INSTRUCT THE
> JURY THAT IT MAY DRAW AN ADVERSE INFERENCE
> FROM THE STATE'S FAILURE TO PRODUCE THE VICTIM
> AT TRIAL REQUIRES REVERSAL.
>
> Ground Three:  THE STATE'S USE OF POLICE TESTIMONY
> OF THE UNKNOWN PERSON WHO STATED THAT THE

3

PEOPLE IN THE BROWN COLORED CADILLAC WAS
INVOLVED IN DOING STICKUPS IN THE LOCAL AREA
VIOLATED DEFENDANT'S FIFTH, SIXTH AND
FOURTEENTH AMENDMENT TO THE UNITED STATES
CONSTITUTION.

Ground Four:  INEFFECTIVE ASSISTANCE OF COUNSEL AT
THE TRIAL LED TO A MISCARRIAGE OF JUSTICE IN
VIOLATION OF DEFENDANT'S FIFTH, SIXTH AND
FOURTEENTH AMENDMENT RIGHTS, REQUIRING A
REVERSAL IN THE CASE BEFORE THE BAR.

Ground Five:  THERE WAS A GROSS INSUFFICIENCY OF
THE EVIDENCE IN THIS CASE, VIOLATING DUE PROCESS
OF LAW AND LEADING TO A CONVICTION FOR A CRIME
THAT SHOULD HAVE BEEN DISMISSED AGAINST
DEFENDANT.

Ground Six:  THE PROSECUTOR VIOLATED DEFENDANT'S
RIGHT TO DUE PROCESS OF LAW AS ENUNCIATED IN
THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO
THE UNITED STATES CONSTITUTION.

Ground Seven:  THE RECORD AS IT EXISTS - WHICH NEEDS
TO BE SUPPLEMENTED BY AN EVIDENTIARY HEARING -
REVEALS THAT THERE ARE SERIOUS PROBLEMS WITH
THE STOP AND RESULTANT "PLAIN VIEW" DISCOVERY
OF THE HANDGUN ON THE BACK FLOOR OF THE
CADILLAC.  THE ONLY BASIS FOR POSITING
"REASONABLE SUSPICION" WAS AN ANONYMOUS TIP
BY A PASSERBY WHO IDENTIFIED THE BROWN
CADILLAC TO POLICE AS A VEHICLE SIMILAR TO ONE
USED BY THE ROBBERS WHO HAD VICTIMIZED HIM
ABOUT A WEEK PRIOR.  WITHOUT ANY
CORROBORATION WHATSOEVER - BEYOND THE B[ARE]
FACT OF THE PRESENCE OF A BROWN CADILLAC - THE
POLICE PARKED THEIR VEHICLE BEHIND THE
CADILLAC, WHICH HAD JUST PULLED INTO A MOTEL
PARKING LOT PARKING SPACE, PREVENTED EGRESS IF
THEY WOULD HAVE BEEN THE PASSENGERS'
RESPONSE, AND ORDERED THOSE EMERGING FROM THE
CAR TO GET BACK IN THE VEHICLE, CLINCHING THE
CHARACTER OF THE ENCOUNTER AS AN

INVESTIGATORY STOP IF THE BLOCKING OF THE
CADILLAC'S ABILITY TO MOVE HAD NOT.  IT WAS ONLY
AFTER THESE EVENTS TOOK PLACE THAT ONE OF THE
PLAIN CLOTHES OFFICERS APPROACHED THE VEHICLE
AND ALLEGEDLY SAW THE GUN IN PLAIN VIEW.

Ground Eight:  TRIAL COUNSEL'S FAILURE TO
INVESTIGATE THE TRUTH AND PLAUSIBILITY OF TOSHA
HILL'S ALLEGED OVERHEARING OF DEFENDANT'S
CONFESSION IN THE HUDSON COUNTY JAIL WITHIN A
COUPLE OF WEEKS OF THE ARREST IS A LAPSE IN
PROFESSIONAL PERFORMANCE SO SERIOUS AS TO
MANDATE THE GRANT OF A NEW TRIAL.  MS. HILL WAS
THE ONLY WITNESS TO CORROBORATE THE TESTIMONY
OF THE STATE'S STAR WITNESS, THE CODEFENDANT
WHO IS A CAREER CRIMINAL.  ACCORDING TO A FULLY
CREDIBLE OFFICER AT THE JAIL, RECORDS INDICATE
THAT MS. HILL COULD NOT HAVE BEEN IN THE
POSITION TO OVERHEAR ANY COMMENTS MR. NESMITH
WAS ALLEGED TO HAVE MADE.

Ground Nine:  WITH THE CREDIBILITY OF FRANK DUNCAN
THE CRUCIAL PIVOTAL ISSUE IN THIS TRIAL, AN EFFORT
SHOULD HAVE BEEN MADE TO ATTACK IT FROM EVERY
AVENUE.  SPECIFICALLY, NOT TO CALL CHARACTER
WITNESSES TO OFFER OPINIONS AND REPUTATION
EVIDENCE ON DUNCAN'S TRAIT FOR TRUTH TELLING
WAS A SINGULAR DEFICIENCY IN THE CONTEXT OF THIS
TRIAL.  IT REPRESENTED A CLEAR INSTANCE OF BELOW
STANDARD PERFORMANCE WHICH LIKELY COST
DEFENDANT HIS INNOCENCE.

(Pet. ¶ 12, Addendum II.)

In response to this Court's <u>Mason</u> order, Petitioner filed a motion to stay and abate

proceedings pending exhaustion of two new claims, which were not included in the nine claims

in the Petition.[1]  By Order and Opinion filed August 28, 2006, this Court denied Petitioner's

---

[1] Petitioner sought to raise claims arising from the Supreme Court's decisions in
<u>Crawford v. Washington</u>, 541 U.S. 36 (2004), and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).

motion to stay and abate proceedings, directed Respondents to file an answer and relevant portions of the state record, and permitted Petitioner to file a reply.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."  Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).  In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent

6

to the facts of the case unless the petitioner asserts the claim as a ground for relief.[2]  Nor may the

Court recharacterize a ground asserted under state law into a federal constitutional claim.[3]

"[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process

Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "it is well

established that a state court's misapplication of its own law does not generally raise a

constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal

quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

The AEDPA limits a federal court's authority to grant habeas relief when a state court has

adjudicated Petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal

claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless

adjudication of the claim either involved an unreasonable application of clearly established

federal law, or was based on unreasonable determination of the facts in light of the evidence

before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

---

[2] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[3] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

7

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006) ("Here, because the PCRA appellate court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its decision to deny habeas relief on that basis constituted an adjudication on the merits"). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla, 355 F.3d at 247. On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F. 3d at 678.

8

As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to Petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Petitioner is in custody in violation of the Constitution or laws or treaties of the United States, see 28 U.S.C. § 2254(a), (d)(2).

The grounds raised in the Petition are governed by 28 U.S.C. § 2254(d)(1), which prohibits a district court from granting habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1). A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.   A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme]

Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06

(2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Williams, 529 U.S. at 413.  "A federal habeas court may not issue the writ simply because it

concludes in its independent judgment that the state court applied clearly established law

incorrectly.  'Rather, that application must also be unreasonable.'"  Albrecht v. Horn, 485 F. 3d

103, 116 (3d Cir. 2007) (quoting Williams, 529 U.S. at 410).  Whether a state court's application

of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but

still not unreasonable.[4]  Id. at 409-10.

## III.  DISCUSSION

A.  Instructions

     In Grounds One and Two, Petitioner asserts that the failure to properly instruct the jury on

accomplice liability (Ground One) and to instruct the jury that it could draw an adverse inference

from the failure of the victim to testify (Ground Two) constituted reversible error.

     Petitioner contends in Ground One that "THE COURT'S FAILURE TO INSTRUCT

THE JURY THAT DEFENDANT COULD BE CONVICTED OF SECOND DEGREE

ROBBERY AS AN ACCOMPLICE EVEN IF THE PRINCIPAL HAD COMMITTED FIRST

DEGREE ROBBERY CONSTITUTED REVERSIBLE ERROR."  (Pet., Addendum II, Point I.)

---

    [4] "[D]ecisions of federal courts below the level of the United States Supreme Court may
be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly
established United States Supreme Court precedent, as well as helpful amplifications of that
precedent."  Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal
quotation marks omitted).

As factual support, Petitioner states that, while the trial court "charged the lesser included offense of second degree robbery . . . the jury was never informed during the charge that even if the principal had committed a first degree robbery, the accomplice could be found guilty of a lesser offense if the accomplice's intent was only to facilitate the lesser serious crime.  This error prevented the jury from considering the totality of the evidence before it and directed the jury's determination to a higher degree leading them to believe that if the principal committed a first degree crime, the accomplice did also."  (Pet., Addendum II, Point I. Supporting Facts.)

Relying on State v. Bielkiewicz, 267 N.J. Super. 520 (App. Div. 1993), and Vujosevic v. Rafferty, 844 F. 2d 1023, 1027 (3d Cir. 1988), Petitioner raised Ground One on direct appeal. Although the headnote was essentially identical to Ground One, Petitioner argued in his brief before the Appellate Division that the failure to give the Bielkiewicz charge deprived Petitioner of Due Process under the Fourteenth Amendment.  The Appellate Division rejected the claim, finding that Petitioner was not entitled to the instruction under state law because the evidence did not show that Petitioner was less culpable than his accomplice.  Specifically, the Appellate Division found:

> Nesmith's claim that the court should have charged that he, as an accomplice, could have been convicted of a lesser crime than Duncan, is premised on the [illegible] Duncan was the principal offender and defendant just an accomplice.  That premise is invalid.

> Duncan and Nesmith were equal participants in the robbery of Kilby or, if anything, Nesmith was the more active of the two.  It was Nesmith who removed Kilby's personal property and it was Nesmith who tied up Kilby.  While it is true that Duncan had the gun, any attempt to paint Nesmith as a less active participant than Duncan is clearly inaccurate.

> Nesmith's argument is based on <u>State v. Bielkiewicz</u>, 267 N.J. Super. 520, 531 (App. Div. 1993), which holds that a court should instruct a jury that one charged as an accomplice can be convicted of a lesser crime than one charged as a principal.  However that proposition has no applicability here where the two men were equal principals, and there is no principal-accomplice relationship.  As this court said in <u>State v. Rue</u>, 296 N.J. Super. 108, 115-16 (App. Civ. 1996), a <u>Bielkiewicz</u> charge is inappropriate when "there is absolutely no evidence from which a jury . . . could differentiate between [defendant's] . . . culpability and that of the other . . . [perpetrator] of this crime."
>
> In any event, the charge delivered by the trial court did make clear that if the jury viewed defendant as an accomplice, they could find him guilty of something other than, or less than, what Duncan did . . . .  In sum, there was no occasion for a <u>Bielkiewicz</u> charge here, particularly since defense counsel made no request for such a charge, but, in any event, the substance of the charge was actually submitted to the jury.

<u>State v. Nesmith</u>, Docket No. 3174-96T4 slip op. at pp. 6-7 (N.J. Super., App. Div., April 14, 1998).

This Court lacks subject matter jurisdiction over Ground One because Petitioner does not assert a constitutional violation.  The Appellate Division determined that Petitioner was not entitled to the lesser included offense instruction as a matter of state law, and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  <u>Bradshaw v. Richey</u>, 546 U.S. 74, __, 126 S. Ct. 602, 604 (2005).

Even if Petitioner asserted a constitutional violation and this Court had jurisdiction over the claim, the failure to give such an instruction was not contrary to, or an unreasonable application of, Supreme Court precedent because (1) the Supreme Court has never held that the Due Process Clause guarantees the right of a defendant to have the jury instructed on a lesser

included offense in a non-capital case, and (2) the lesser included offense instruction is constitutionally required in a capital case only when warranted by the evidence, and the Appellate Division in this case held that the requested lesser included offense charge was not supported by the evidence.

The Supreme Court held in Beck v. Alabama, 447 U.S. 624 (1980), that, "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense - but leaves some doubt with respect to an element that would justify conviction of a capital offense - the failure to give the jury the 'third option' of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted [capital] conviction" in violation of Due Process.  Id., 447 U.S. at 637.  However, the Supreme Court has not extended Beck to non-capital cases.  In Gilmore v. Taylor, 508 U.S. 333, 342 (1993), the Supreme Court noted that, "[o]utside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error.  To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief."  In Schad v. Arizona, 501 U.S. 624 (1991), the Supreme Court held that, where a jury was given a choice between finding the defendant guilty of capital murder and the lesser included non-capital offense of second-degree murder, due process did not entitle the defendant to a jury instruction on the lesser included offense of robbery.  "The goal of the Beck rule, in other words, is to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence.  This central concern of Beck simply is not implicated in the present case, for petitioner's jury was not faced with an all-or-nothing choice between the offense of conviction (capital murder) and innocence."  Schad, 501

13

U.S. at 646-47 (citations and internal quotation marks omitted).  Because the jury was not forced to choose between convicting Petitioner of capital murder and setting him free, Supreme Court precedent did not require the instruction on the accomplice liability instruction.

Second, Supreme Court precedent holds that the lesser included offense instruction is required only if supported by the evidence, and the Appellate Division determined that the Bielkiewicz instruction was not supported by the evidence.  In Hopper v. Evans, 456 U.S. 605 (1982), the Supreme Court clarified that "due process requires that a lesser included offense instruction be given [in a capital case] *only* when the evidence warrants such an instruction."  See also Kontakis v. Beyer, 19 F. 3d 110, 119 (3d Cir. 1994) ("Nothing in Beck permits us to grant habeas relief when a state court refuses to charge a jury that it may convict a defendant for an offense when under state law the evidence could not justify the conviction").

In Ground Two, Petitioner asserts that "THE COURT'S REFUSAL TO INSTRUCT THE JURY THAT IT MAY DRAW AN ADVERSE INFERENCE FROM THE STATE'S FAILURE TO PRODUCE THE VICTIM AT TRIAL REQUIRES REVERSAL."  (Pet., Addendum II, Point II.)  As factual support, Petitioner asserts that, although the state's investigator testified that he had unsuccessfully tried to contact the victim by way of a letter and telephone call, the trial court's denial of Petitioner's request to charge the jury that it could infer from the state's failure to produce the victim that his testimony would have been adverse to the state, violated Petitioner's "constitutional right to a fair trial."  (Pet., Addendum II, Point II. Supporting Facts.)  The government argues that Ground Two involves state law and does not implicate the Constitution and, to the extent that it raises a constitutional claim, due process does not require the claimed instruction.

14

Petitioner raised Ground Two on direct appeal, relying exclusively on State v. Clawans, 38 N.J. 162 (1962). The Appellate Division rejected the claim because the Clawans charge was required only where "the person was within the power of the party to produce," Clawans, 38 N.J. at 171, and the victim's nonappearance in this case was beyond the control of the State. Specifically, the Appellate Division found:

> While Kilby's testimony would obviously have been desirable, the State demonstrated that it was not "within the power" of the prosecution to produce that testimony. There is no reason to believe that the State was dissembling or that it could have done any more to produce Kilby.

State v. Nesmith, Docket No. A-3174-96T4 slip op. at p. 8.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." Id. As the Third Circuit explained,

> In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses. Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements. See McMillan v. Pennsylvania, 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).
>
> It thus follows that for the error of state law in the justification

15

> instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct understate law with respect to the elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

Petitioner is not entitled to habeas relief on Ground Two because he does not point to a federal requirement that jury instructions must include the Clawans charge, nor does he show that the absence of this instruction deprived him of a defense which federal law provided to him.  See Johnson, 117 F.3d at 111.  And "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."  Estelle, 502 U.S. at 71-72; see also Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief").  Moreover, Petitioner cites no Supreme Court authority for the proposition that the jury instructions violated a clearly established federal right, as determined by the Supreme Court.  He is therefore not entitled to habeas relief on Ground Two.

16

B.  Deficient Indictment

In Ground Three, Petitioner asserts that "THE STATE'S USE OF POLICE TESTIMONY OF THE UNKNOWN PERSON WHO STATED THAT THE PEOPLE IN THE BROWN COLORED CADILLAC WAS INVOLVED IN DOING STICKUPS IN THE LOCAL AREA VIOLATED DEFENDANT'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."  (Pet. Addendum II, Point III.)  As factual support, Petitioner states that the state improperly presented to the grand jury the testimony of police officer Jacqueline Baljko that she investigated the brown Cadillac in which Petitioner was riding based on the statement of an unknown black male that the occupants of the Cadillac had robbed him the previous week.  Petitioner asserts that this testimony was improperly presented to the grand jury because it was not credible, violated Petitioner's right to confront witnesses, and created irreparable injury.  Respondents argue that the claim raises a question of state law, and that, under state law, an indictment may be based on hearsay evidence, and a conviction bars a challenge to irregularities before the grand jury.

Petitioner raised Ground Three in his supplemental pro se brief on direct appeal.  The Appellate Division rejected the claim without discussion.

The Fifth Amendment right to an indictment by a Grand Jury does not apply to State criminal prosecutions.  See Apprendi v. New Jersey, 530 U.S. 466, 477 n.3 (2000); Albright v. Oliver, 510 U.S. 266, 272 (1994); Hurtado v. California, 110 U.S. 516 (1884).  Because the Due Process Clause of the Fourteenth Amendment has not been construed to incorporate the Fifth Amendment right to indictment by a Grand Jury, id., the legality of an indictment is a matter of state law, see U. S. Wojtycha v. Hopkins, 517 F.2d 420, 425 (3rd Cir. 1975).  Accordingly,

17

"there is no federal constitutional impediment to dispensing entirely with the grand jury in state prosecutions."  Beck v. Washington, 369 U.S. 541, 545 (1962).  Moreover, "the accused is not 'entitled to [federal] judicial oversight or review of the decision to prosecute.'"  Albright, 510 U.S. at 274 (quoting Gerstein v. Pugh, 420 U.S. 103, 118-119 (1975)).  Without offending the Constitution, State prosecutions may be "instituted on informations filed by the prosecutor, on many occasions without even a prior judicial determination of 'probable cause' - a procedure which has likewise had approval [of the Supreme Court] in such cases as Ocampo v. United States, 234 U.S. 91, 34 S. Ct. 712, 58 L.Ed. 1231 (1914), and Lem Woon v. Oregon, 229 U.S. 586, 33 S. Ct. 783, 57 L.Ed. 1340 (1913)."  Beck v. Washington, 369 U.S. at 545; accord Rose v. Mitchell, 443 U.S. 545, 576 (1979) ("There is no constitutional requirement that a state criminal prosecution even be initiated by a grand jury").  Because Ground Three does not assert a cognizable federal claim, Petitioner is not entitled to habeas relief on Ground Three.

C.  Ineffective Assistance of Counsel

In Grounds Four, Eight and Nine, Petitioner asserts that defense counsel was constitutionally ineffective.  Specifically, he asserts that counsel failed to interview the victim; counsel failed to investigate the truth and implausibility of the testimony of Tosha Hill, a witness for the state, that she overheard Petitioner's confession through a ventilation vent at the Hudson County Jail; and counsel failed to call witnesses to testify about co-defendant Duncan's reputation and lack of credibility.  Petitioner alleges that, had counsel interviewed the victim, the victim would have established that Petitioner did not possess a weapon and did not rob the victim.  Petitioner asserts that, had counsel investigated the circumstances at the Hudson County Jail, counsel would have presented testimony of a corrections officer that Tosha Hill was not

housed near Petitioner and could not have overheard him.  Petitioner asserts that, had counsel called witnesses who knew the character of co-defendant Duncan, these witnesses would have testified that is a career criminal with a reputation for not telling the truth.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Id. at 688.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.  To satisfy the second prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

Judicial scrutiny of counsel's performance must be highly deferential and the proper

measure of attorney performance is reasonableness under prevailing professional norms.  See

Strickland, 466 U.S. at 688-89.

> A fair assessment of attorney performance requires that every effort
> be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the evaluation, a
> court must indulge a strong presumption that counsel's conduct
> falls within the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption that, under
> the circumstances, the challenged action might be considered
> sound trial strategy. There are countless ways to provide effective
> assistance in any given case. Even the best criminal defense
> attorneys would not defend a particular client in the same way.

Id. at 689-90 (citations and internal quotation marks omitted).

In this case, Petitioner's ineffective assistance claims stem from counsel's alleged failure

to interview the victim, failure to adequately investigate an alleged jailhouse confession to

witness Hill, and failure to investigate and call character witnesses to impeach Duncan's

credibility.  The Supreme Court has defined the deference owed such judgments in terms of the

adequacy of the investigation supporting those judgments:

> Strategic choices made after thorough investigation of law and
> facts relevant to plausible options are virtually unchallengeable;
> and strategic choices made after less than complete investigation
> are reasonable precisely to the extent that reasonable professional
> judgments support the limitations on investigation. In other words,
> counsel has a duty to make reasonable investigations or to make a
> reasonable decision that makes particular investigations
> unnecessary. In any ineffectiveness case, a particular decision not
> to investigate must be directly assessed for reasonableness in all
> the circumstances, applying a heavy measure of deference to
> counsel's judgments.

<u>Wiggins v. Smith</u>, 539 U.S. 510, 521-522 (2003) (quoting <u>Strickland</u>, 466 U.S. at 690-91).

Petitioner presented his ineffective assistance claims to the Appellate Division on post-conviction review.  The Appellate Division found that counsel's performance was not deficient in regards to the jailhouse confession to Hill:

> At the outset, we note that the record shows trial counsel vigorously attacked on cross-examination the plausibility of Hill's testimony.  Trial counsel directly challenged Hill's claim that defendant joked with her through the vent in the Hudson County Jail.  In addition, trial counsel impeached Hill's credibility with her extensive history of drug abuse, and her agreement with the State resulting in dismissal of all charges . . . .
>
> We note that McCleary's memorandum simply deals with the issue of the housing assignment for defendant and Hill.  The memo confirms the possibility for individuals on different floors of the jail to converse through a vent.  The memorandum is not dispositive of the issue.  Defendant and Hill could have conversed if they had happened to be momentarily at the right location at the same time, even if their housing assignments would have precluded it . . . .
>
> We have carefully reviewed the record of the second PCR hearing and conclude that, although the judge's findings were sparse, the trial court properly denied defendant's PCR.  On its face, the facts presented do not support defendant's ineffective assistance claim.  Considering the limited value of McLeary's report and the fact that he prepared it several years after the trial, we conclude that defendant has not presented facts sufficient to meet the first prong of the <u>Strickland/Fritz</u> standard.

<u>State v. Nesmith</u>, Docket Nos. A-0064, A-0103 slip op. at pp. 9-12 (N.J. Super., App. Div., Oct. 29, 2004).

As to Petitioner's claim that counsel was deficient in failing to call character witnesses to impeach his co-defendant's testimony, the Appellate Division also found that counsel's performance was not deficient:

21

> This allegation is based on three character witness interviews
> conducted by a defense investigator in March 2003, again over six
> years after the trial.  Jersey City Captain John Sheyka indicated in a
> character witness interview that Duncan's reputation in the
> community was that of a "stick up man."  He added, "I would not
> believe anything [Duncan] says.  He always has an ulterior motive.
> Frank Duncan only tells the truth when it benefits him."  Similar
> views were expressed by two civilians who had known Duncan for
> many years.
>
>   We conclude that trial counsel was not ineffective for failing to
> search for and present these witnesses.  Such testimony would have
> been merely cumulative in impeaching Duncan's testimony.
> Moreover, all three indicated that Duncan was a "stick up man."
> This testimony tends to corroborate Duncan's admission of
> participation in armed robbery with defendant at the truck stop.

State v. Nesmith, Docket Nos. A-0064, A-0103 slip op. at pp. 13 (N.J. Super., App. Div., Oct.

29, 2004).

This Court finds that the New Jersey courts' adjudication of Plaintiff's claims based on

counsel's failure to more fully investigate the circumstances of the jailhouse confession, and

failure to find and present character witnesses to impeach Duncan's credibility, was not contrary

to, or an unreasonable application, of Strickland and its progeny.

It is not clear whether Petitioner presented his claim that counsel was ineffective in

failing to interview the victim to the New Jersey courts.  In any case, this Court will deny the

claim on the merits because it does not present a colorable federal claim.[5]  Given that the trial

_____

[5] "An application for a writ of habeas corpus may be denied on the merits,
notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the
State.  28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 134 F.3d 506, 515 (3d Cir. 1997) (district
court may deny an unexhausted petition on the merits under § 2254(b)(2) "if it is perfectly clear
that the applicant does not raise even a colorable federal claim").

court found that the victim was unavailable, counsel could hardly have been deficient in failing to interview the victim.  See State v. Nesmith, Docket No. A-3174-96T4 slip op. at p. 8.

D.  Sufficiency of the Evidence

Petitioner asserts in Ground Five that "THERE WAS A GROSS INSUFFICIENCY OF THE EVIDENCE IN THIS CASE, VIOLATING DUE PROCESS OF LAW AND LEADING TO A CONVICTION FOR A CRIME THAT SHOULD HAVE BEEN DISMISSED AGAINST DEFENDANT."  (Pet. Addendum II, Point V.)  As factual support, he states:

> In this instance, petitioner argued that there was insufficient credible evidence presented at trial to substantiate the conviction for the offenses he was convicted for thereby violating due process. Petitioner makes this argument premised on the fact that there was no evidence establishing that he possessed the weapon in question during the incident, he was not identified by anyone who was robbed and the alleged victim did not testify during the trial proceedings.  Moreover, it is suggested that petitioner was only made the principal participant in this incident because the others sought to achieve some form of leniency for their testimony.

(Pet. Addendum II, Point V., Supporting Facts.)

A sufficiency of the evidence claim is governed by Jackson v. Virginia, 443 U.S. 307, 318 (1979).  In Jackson v. Virginia, the Supreme Court determined that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 - if the settled procedural prerequisites for such a claim have otherwise been satisfied - the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. at 324.  The Court instructed a federal habeas corpus court "faced with a record of historical facts that supports conflicting inferences [to] presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any

23

such conflicts in favor of the prosecution, and [to] defer to that resolution." Id. at 326.  The

Court emphasized that "the standard . . . does not permit a court to make its own subjective

determination of guilt or innocence." Id. at 320, n. 13.  "[U]nder Jackson, the assessment of

credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298,

330 (1995).

Petitioner raised Ground Five on direct appeal in his pro se brief, and the Appellate

Division rejected it without discussion.  However, the Appellate Division's summary of the facts

demonstrates that a rational trier of fact could have found guilt beyond a reasonable doubt:

> The facts of the case are not complicated.  Much of the evidence
> was presented by co-defendant Frank Duncan, who testified
> pursuant to a plea agreement under which he pleaded guilty to a
> third degree offense and was sentenced to five years imprisonment.
> He described meeting defendant Nesmith at a truck stop in
> Kearney on October 31, 1995.  He said the two, who were
> acquaintances, spoke briefly and agreed to rob one Lee Kilby, a
> truck driver who was at the truck stop at the time.  Duncan had a
> gun and the two went to Kilby's truck and opened the passenger
> door.  Duncan showed Kilby the gun and Nesmith told Kilby to lie
> on the floor in the rear of the truck.  Kilby did so and Nesmith then
> removed Kilby's watch and wallet, handed them to Duncan and
> then tied Kilby's hands together.  During this time Duncan kept
> watch for anyone approaching the truck.  The two then threw a
> sleeping bag over Kilby, told him to remain quiet and he would not
> be hurt, and left the truck.
>
> As Duncan and Nesmith walked toward Duncan's car, Duncan
> handed the gun to Nesmith.  At about that time Kilby began to call
> for help and Duncan and Nesmith began running toward their car.
> When they got there, they met Tosha Hill and Claretha Roach, two
> prostitutes who were working the area of the truck stop.  They
> joined the two men in Duncan's car, drove away, but all were
> apprehended by the police at a nearby hotel.  As the police
> approached their car, Nesmith told Hill to "get rid of" the gun and
> Hill kicked it under the front seat.  The police, however, found the
> gun and also found Kilby's wallet which Duncan dropped in the

24

> police car.  Following the arrest of the two men, the police also
> found Kilby's watch in Duncan's pocket and found a box cutter in
> Nesmith's pocket.  The gun was subsequently test-fired by the
> police and determined to be inoperable.

State v. Nesmith, Docket No. A-3174-96T4 slip op. at pp. 4-5 (N.J. Super., App. Div., April 14, 1998).

The above described evidence shows that there was adequate factual support to convict Petitioner of the charges.  The Appellate Division's rejection of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of, Jackson v. Virginia, and Petitioner is not entitled to habeas relief on Ground Five.

E.  Prosecutorial Misconduct

In Ground Six, Petitioner asserts that "THE PROSECUTOR VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS ENUNCIATED IN THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."  (Pet., Addendum II, Point Vi.)  He provides factual support as follows:

> Here, petitioner argued that the prosecutor committed
> misconduct when he knowingly utilized perjured and unreliable
> testimony.  Petitioner points to the testimony provided by co-
> defendant Duncan which misrepresented the facts as provided by
> the alleged victim, lessened his own involvement and incriminated
> petitioner.  All provided by the prosecution when they knew that it
> was contrary to what the victim had stated occurred.  Important
> factors initially provided by the victim and later attributed to
> petitioner were; who robbed him, who tied him up, who he had
> spoken with and what was said.  During the trial the prosecutor,
> knowing or intending, that the victim not appear, permitted Duncan
> to testify that petitioner committed these acts and illegally gave
> him a deal of 5 years imprisonment to falsify his testimony.  The
> record is clear as to who these acts were attributed to and this
> misconduct denied petitioner his right to a fair trial.

(Pet., Addendum II, Point VI, Supporting Facts.)

Petitioner raised Ground Six on direct appeal in his pro se brief, and the Appellate Division rejected it without discussion.  Respondents argue that Ground Six fails because the jury was aware of Duncan's criminal record and his plea agreement, and Petitioner's dissatisfaction with Duncan's testimony does not show that the prosecutor knew Duncan's testimony was perjured.

In Napue v. Illinois, 360 U.S. 264, 269 (1959), the principal state witness falsely testified that he had received no promise of consideration in return for his testimony and the prosecutor did nothing to correct the witness's false testimony.  The Supreme Court held that the prosecutor's failure to correct the testimony which he knew to be false violated due process.  The Court emphasized that "it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  Id.  In Miller v. Pate, 386 U.S. 1 (1967), the Supreme Court reversed the Court of Appeals' reversal of an order granting relief under § 2254 in a case involving the murder of a child where the prosecution presented false testimony that stains on a pair of men's underwear shorts were human blood and the shorts were an important link in the chain of circumstantial evidence against the petitioner.  Noting that it was established that counsel for the prosecution had known at the time of the trial that the shorts were stained with paint, the Court reversed the Court of Appeals, holding that "the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the [prosecutor's] knowing use of false evidence."  Id. at 7.  However, this principle does not apply unless there is actual perjury.  See

26

United States v. Coleman, 230 F. 2d 261 (3d Cir. 1956) (motion to vacate sentence on ground that prosecution presented perjured testimony was properly denied without a hearing where "there was no factual support offered for these allegations" other than what was considered at trial); United States v. Wolny, 133 F. 3d 758, 763 (10th Cir. 1998) ("Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony") (citation and internal quotation marks omitted).

In this case, Petitioner has not shown that the testimony was perjured or that the prosecutor knowingly presented perjured testimony.  This Court finds that the New Jersey courts' adjudication of Petitioner's prosecutorial misconduct claim is not contrary to, or an unreasonable application of, Supreme Court precedent, and habeas relief is not warranted on Ground Six.

F.  Fourth Amendment Stop

In Ground Seven, Petitioner asserts that "the stop and resultant 'plain view' discovery of the hand gun on the back floor of the Cadillac" violated the Fourth Amendment because the police officer did not have reasonable suspicion or probable cause.  (Pet., Addendum II, Point VII.)

In United States v. Hensley, 469 U.S. 221, 229 (1985), the Supreme Court held that, "if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion."  Id.  In Adams v. Williams, 407 U.S. 143 (1972), a person known to a police officer on patrol car duty informed the officer that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist.  Id. at 145. The officer

approached the vehicle, tapped on the window, and asked the occupant to open the door.  Id.

When the occupant rolled down the window instead, the officer reached into the car and removed

a gun from his waistband.  Id.  The Supreme Court held that the informant's tip provided

reasonable suspicion to justify the stop:

> [W]e believe that Sgt. Connolly acted justifiably in responding to
> his informant's tip.  The informant was known to him personally
> and had provided him with information in the past.  This is a
> stronger case than obtains in the case of an anonymous telephone
> tip.  The informant here came forward personally to give
> information that was immediately verifiable at the scene.  Indeed,
> under Connecticut law, the informant might have been subject to
> immediate arrest for making a false complaint had Sgt. Connolly's
> investigation proved the tip incorrect.  Thus, while . . . this
> informant's unverified tip may have been insufficient for a
> narcotics arrest or search warrant, the information carried enough
> indicia of reliability to justify the officer's forcible stop of
> Williams.
>
>    In reaching this conclusion, we reject respondent's argument that
> reasonable cause for a stop and frisk can only be based on the
> officer's personal observation, rather than on information supplied
> by another person.  Informants' tips, like all other clues and
> evidence coming to a policeman on the scene, may vary greatly in
> their value and reliability.  One simple rule will not cover every
> situation.  Some tips, completely lacking in indicia of reliability,
> would either warrant no police response or require further
> investigation before a forcible stop of a suspect would be
> authorized.  But in some situations - for example, when the victim
> of a street crime seeks immediate police aid and gives a description
> of his assailant, or when a credible informant warns of a specific
> impending crime - the subtleties of the hearsay rule should not
> thwart an appropriate police response.

Id. at 146-47 (citations, internal quotation marks and footnotes omitted).

In Alabama v. White, 496 U.S. 325 (1990), the police received an anonymous telephone

tip stating that Vanessa White would be leaving a particular apartment at a particular time in a

brown Plymouth station wagon, that she would be going to Dobey's Motel, and that she would be in possession of cocaine.  The police stopped White's vehicle after officers observed a woman leaving the specified apartment building and driving to the street on which Dobey's Motel was located in a brown Plymouth station wagon.  The Court held that the investigative stop did not violate the Fourth Amendment because the anonymous tip had been sufficiently corroborated to furnish reasonable suspicion.  Id. at 331.

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability.  Both factors - quantity and quality - are considered in the totality of the circumstances - the whole picture, that must be taken into account when evaluating whether there is reasonable suspicion.  Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable . . . .  [W]e conclude that when the officers stopped respondent, the anonymous tip had been sufficiently corroborated to furnish reasonable suspicion that respondent was engaged in criminal activity and that the investigative stop therefore did not violate the Fourth Amendment.

Id. at 330-31.

In Florida v. J.L., 529 U.S. 266 (2000), the Supreme Court held that police officers lacked reasonable suspicion to make a Terry stop based on an anonymous telephone call reporting that "a young black male standing at a particular bus stop and wearing a plain shirt was carrying a gun."  Id. at 268.  The Court noted that "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop."  Id. at 270.  "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity."  Id.

at 270 (citations and internal quotation marks omitted).  Because "[a]ll the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L.," the tip lacked sufficient indicia of reliability.  Id. at 271.

This Court holds that the New Jersey courts' rejection of Petitioner's Fourth Amendment claim was not contrary to, or an unreasonable application of the above precedents.  In this case, the informant was a person who told police that the occupants of the brown Cadillac had robbed him the prior week.  Unlike the situation in Florida v. J.L., this informant was accountable (he was present on the scene), the tip was given to police face to face, and the informant explained to the police how he knew that the persons in the Cadillac had committed a crime.  Because the informant's tip was accompanied by sufficient indicia of reliability, the stop did not violate the Fourth Amendment.  See Florida v. J.L., 529 U.S. at  (Kennedy, J., concurring) ("If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip.  An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring"); United States v. Johnson, 95 Fed. Appx. 448 (3d Cir. 2004) ("the Supreme Court has recognized that a stop and frisk can be based on a tip from a known informant whose reputation can be assessed and who can be held responsible if his allegations turn out to be fabricated"); United States v. Valentine, 232 F. 3d 350, 354 (3d Cir. 2000) ("a tip given face to face is more reliable than an anonymous telephone call [as] the officer has an opportunity to assess the informant's credibility and demeanor").

30

Petitioner is not entitled to habeas relief on Ground Seven because the New Jersey courts'

adjudication of the claim was not contrary to, or an unreasonable application of Supreme Court

precedent.

G.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a

substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See

Miller-El v. Cockrell, 537 U.S. 322 (2003).

**III.  CONCLUSION**

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to

issue a certificate of appealability under 28 U.S.C. § 2253(c).


                                                    /s/ JOEL A. PISANO
                                                    United States District Judge


DATED: August 2, 2007